UNITED STATES of America, Plaintiff,

v.

**Carlos STREAT, Defendant.**

**No. 93CR0007.**

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 3, 1995.

Christa Bruntz, Asst. U.S. Atty., for Government.

Donald Krosin, Federal Public Defender, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

For the reasons stated below, this Court finds that Carlo Streat's physical condition, marked by final-stage AIDS and several related conditions, is sufficient to warrant a departure from the applicable Sentencing Guidelines range, pursuant to U.S.S.G. § 5H1.4. However, this Court further finds

that Streat's personal and financial condition, in combination with the current nature of this country's health care system, causes the application of § 5H1.4 to be unjust and inappropriate.

### I.

On June 2, 1993, Carlo Streat pled guilty to one count of bank robbery in violation of 18 U.S.C. § 2113(a). This Court sentenced him to 63 months in prison, with two years of supervised release. In *United States v. Streat*, 22 F.3d 109 (6th Cir.1994), the Sixth Circuit vacated this Court's sentence and remanded for resentencing. In its opinion, the Sixth Circuit held that Streat's criminal history category was improperly calculated.[1] The Circuit also indicated that this Court erroneously concluded that it did not have the discretion to consider Streat's AIDS-related illnesses as a grounds for departure. Specifically, the Circuit noted,

> There is little authority specifically addressing the circumstances under which AIDS is a proper ground for a downward departure. Still, sections of the guidelines could justify a downward departure under certain circumstances. Whether AIDS alone, or AIDS accompanied by the physical deterioration characterizing the latter stages of the disease, warrants a downward departure need not be decided today. Upon remand, the district court will have the opportunity to exercise its discretion as permitted under the guidelines.

*Id.* at 112–13 (citations omitted).

On remand, this Court conducted an inquiry into the exact nature of Streat's physical

---

1. Three of Streat's prior offenses took place in 1990. (August 31, 1990; September 7, 1990; December 7, 1990). Each was for possession of cocaine. Streat received the same sentence for each offense: one year in custody, suspended, and two years of probation, with all three sentences to be served concurrently. On May 8, 1992, Streat was found to be in violation of probation, and was sentenced to one year's incarceration for each of the three convictions, each sentence to be served concurrently.

For purposes of calculating Streat's criminal history category, given Note 11 to § 4A1.2, the effect of these sentences is that the one-year prison term imposed should be added to only one of the three convictions from 1990. The other two convictions remain unenhanced, one-point convictions. The record shows that Streat has

four more one-point convictions. While Streat has a total of six one-point convictions, § 4A1.1(c) limits to four the total number of one-point convictions used in calculating a defendant's criminal history. Accordingly, Streat receives four points for one-point convictions.

Pursuant to § 4A1.1(d), this Court adds to Streat's criminal history an additional two points for committing this offense while under a criminal justice sentence for a violation of probation. This Court further adds a point because the instant offense was committed less than two years after his release from custody for the cocaine sentences.

The total criminal history points is, therefore, nine. While Streat was originally sentenced as having a criminal history category of VI, the appropriate calculation is category IV.

condition. A medical update from the U.S. Medical Center for Federal Prisoners indicated the following:

1. Far advanced Acquired Immune Deficiency Syndrome with a T–4 count known to be 1.

2. End stage renal disease on hemodialysis. His renal disease is apparently due to HIV nephropathy and is a manifestation of his HIV disease.

3. Hepatitis C per prior progress report.

4. Chronic wasting syndrome.

Letter of 7/28/94 from Dr. Donald M. Lieberwitz to Warden G.L. Hershberger at 4.

## II.

Under the applicable Sentencing Guideline, U.S.S.G. § 5H1.4,

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

U.S.S.G. § 5H1.4.

## III.

AIDS and HIV disease are horrific and lamentable conditions, and under the current state of medical knowledge, HIV infection is irreversible. See, e.g., William Hazeltine, Prospectus for the Medical Control of the AIDS Epidemic, Daedalus, Journal of American Academy of Arts and Sciences, Summer 1989. The exact course of HIV infection and related infections and complexes varies from patient to patient. Some patients may test positive for the retrovirus antibody for many years before exhibiting symptoms of HIV disease. Others regress to advanced HIV disease or "full-blown AIDS" very rapidly. See Helena Brett Smith and Gerald H. Friedland, Transmission and Treatment, in

AIDS Law Today: A New Guide for the Public (Burris, Dalton & Miller eds. 1993). It is currently believed among the medical community that among the most important indicators is a patient's T4 (or CD4+ T-lymphocytes) count. That is, an HIV-positive patient's short-term prognosis appears to depend to a large degree on the number of infection-fighting cells in the patient's bloodstream. As a patient's T4 count drops significantly, the patient's immune system becomes so compromised that he is at great risk of succumbing to a wide range of infections and malignancies. Id. at 34.

■ As with almost any disease, the severity of the impairment brought on by the disease will vary from patient to patient. Accordingly, the Guidelines provide discretion for a sentencing court in determining the extent of the disease's impact.

■ Because patients may test positive for the HIV antibody while remaining completely asymptomatic for years, many courts have held that a defendant's HIV+ status alone does not warrant a departure under § 5H1.4. See e.g., United States v. Thomas, 49 F.3d 253, 260–61 (6th Cir.1995) (quoting United States v. DePew, 751 F.Supp. 1195 (E.D.Va. 1990)); United States v. Woody, 55 F.3d 1257, 1275 (7th Cir. (Ill.)). This Court agrees with that conclusion. However, once a defendant has developed ARCs or infections related to his or her compromised immune system, those impairments may be sufficient to warrant a departure. See Streat, 22 F.3d at 112–13; Thomas, 49 F.3d at 261; DePew, 751 F.Supp. at 1199.

■ In making a determination regarding a defendant's request for departure under § 5H1.4, a court must make particularized findings regarding the specific impairments in question. United States v. Schein, 31 F.3d 135, 138 (3rd Cir.1994) (departure for HIV disease requires particularized finding by trial court); Streat, 22 F.3d at 112. Few, if any, diseases are per se "extraordinary" such that they would require no further inquiry under § 5H1.4.[2]

---

2. Over the past decade, the Center for Disease Control (CDC) has developed several definitions for AIDS, as distinguished from the condition of being HIV+. These definitions carry significant impact for patients, providers, insurers and courts in many contexts. See Carol Levine and

While this inquiry undoubtedly leaves many courts with difficult line-drawing tasks, the instant case poses no such problem. Streat's condition at the time of his sentencing has rendered him hospice-eligible. This Court does not hesitate to find that his condition constitutes an extraordinary physical impairment as that term is used in § 5H1.4. Accordingly, this Court finds that Streat's condition warrants a downward departure to time served.

### IV.

While this Court finds that Streat's medical condition satisfies § 5H1.4, this Court cannot exercise its discretion in good conscience without also considering Streat's unfortunate financial and familial circumstances. As the Second Circuit has noted, "the United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom." *United States v. Johnson,* 964 F.2d 124, 125 (2nd Cir.1992).

Streat is currently a patient in the U.S. Medical Center for Federal Prisoners. If this Court were to alter Streat's sentence to time served, Streat would be released from the hospital where he is currently located. Streat has no assets, no medical insurance or coverage, and no relatives or friends on whom he could rely for comfort during his final days.[3] Ironically and tragically, a downward departure in this case would result in Streat's immediate release from the federal hospital, leaving Streat to die on the streets without anyone to whom he could turn for assistance or support. In this unfortunate circumstance, a downward departure would result in a punishment far greater than that currently faced by Streat. Accord-

ingly, this Court declines to depart under § 5H1.4.

### V.

In sum, this Court finds that Streat's physical condition is sufficient to warrant a departure from the applicable Sentencing Guidelines range, pursuant to U.S.S.G. § 5H1.4. However, this Court finds that the application of such a departure in Streat's unfortunate circumstances would be inhumane. This Court will not depart downward in this case.

IT IS SO ORDERED.

---

Gary L. Stein, *What's in a Name? The Policy Implications of the CDC Definition of AIDS,* Law, Medicine & Health Care, Fall–Winter 1991, pp. 278–290. The most recent amendment to the CDC definition expands AIDS to include those persons whose T4 count is persistently below 200. The result of this amendment is that "a much more heterogeneous HIV population [is considered to have AIDS], extending from those who are severely immunocompromised but clinically well to those who are dying." Smith and Friedland at 36. Because such variations exist in the definition of the disease, this Court does not consider a medical determination that a de-

fendant has AIDS as necessarily disposing of a court's burden to make a particularized finding under § 5H1.4. It is conceivable that a defendant may satisfy the CDC definition of AIDS without satisfying the burden presented by the Sentencing Guidelines.

3. Streat expressed an interest in going to a Veteran's hospital if released. However, no Veteran's hospital is willing to accept him at this time because he is "eligible" for, but not "entitled" to, such care.